## Elleanor Puntenney, Appellee, v. Pauline R. Mantle, Appellant.

## Gen. No. 8,116.

Opinion filed February 8, 1928.

JOHN G. FRIEDMEYER, for appellant.

A. M. FITZGERALD, HARRY C. MOORE and NOAH GULLETT, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

This is an action of assumpsit brought by appellee against appellant in the circuit court of Sangamon

county, to recover back money paid by appellee for Class "D" securities under the Illinois Securities Law passed by the legislature in 1919, Cahill's St. ch. 32, ¶ 254 et seq., on the ground that the same were sold to appellee by appellant in violation thereof.

The first count of the amended declaration charges that appellee bought 1,000 shares of stock of the Consumer's Oil Shale Company for the sum of $90; that said stock was Class "D" securities; that said company had not qualified, under the law, to sell Class "D" securities; that appellant, in making said sale, acted as agent or solicitor of said company, and advised and encouraged appellee to buy said stock and that appellee has tendered back the same to appellant and now tenders it in open court. The second count is like the first except that it charges that appellee purchased 30,000 shares of stock which were Class "D" securities of the Central Oil Shale Refining Company, for $1,140. The third count consists of the consolidated common counts. Two additional counts were also filed. The first relates to the stock of the Consumer's Oil & Shale Company and after alleging that said stock was of Class "D" securities and that said company had not complied with the provisions of the Illinois Securities Law relating to the sale and offering for sale of Class "D" securities, charges that appellant was the owner of 1,000 shares of said stock and did knowingly counsel, advise, solicit and recommend to the plaintiff to buy said shares of stock and unlawfully, fraudulently and knowingly did offer for sale to the plaintiff 1,000 shares of said stock for the purpose of defrauding the plaintiff, and the plaintiff then and there did, upon said counsel's advice, solicitation and recommendations, buy 1,000 shares of stock of and from said appellant then and there acting for herself and on her own behalf. The second count relates to the Central Oil Shale Refining Company stock and after making the same averments in regard to the

failure of said company to comply with the provisions of said law in regard to the sale of Class "D" securities, alleges that appellant was the owner of 50,000 shares of the stock of said company and that she had not complied with the provisions of said law in regard to the sale of Class "D" securities and did knowingly counsel, advise and solicit and recommend to appellee to buy said stock and knowingly unlawfully and fraudulently did offer for sale and did sell in the course of repeated and successive transactions of like character, for her own account, to appellee 30,000 shares of said stock and paid therefor the sum of $1,150. The declaration also seeks to recover attorney's fees.

The trial was had before the court without a jury and a judgment was entered in favor of appellee for $1,240 damages and $400 attorney's fees.

It is first contended by appellant that the evidence does not show that she was the owner of any of the stock in question or was the agent or solicitor of either of said companies in the sale of said stocks, but that she simply acted as a friend of appellee and was, in fact, her agent in the purchase of said stocks for her. This question has been found adversely to appellant's contention in two trials, once by a jury and once by the trial court, and there is ample evidence to sustain these findings of fact. In our view of the case it is immaterial whether appellant was the actual owner of the stocks sold to appellee or that she acted as the agent or solicitor of the respective companies in the sale of said stocks, because it was through the counsel, advice, solicitation and recommendation of appellant that appellee purchased the same, and there are counts covering both situations. In fact, with one exception, all the money that was paid for these stocks was paid directly to appellant by appellee. Appellant was the only one with whom appellee had any dealings or transactions in the purchase of the stocks.

The transactions involved consist of the purchases by appellee, at different times, of three blocks of stock as follows: September 27, 1919, 10,000 shares of Central Oil Refining Company stock, for which she paid $300; October 4, 1919, 1,000 shares Consumer's Oil & Shale Company stock for which she paid $90; and November 28, 1919, 10,000 shares Central Oil Shale Refining Company's stock for which she paid $350.

As to the 1,000 shares of Consumer's Oil & Shale Company stock which appellee purchased October 4, 1919, there can be no question as to the liability of appellant because neither the oil company nor appellant had complied with any of the provisions of the Securities Law. In regard to the purchase of the shares of stock of the Central Oil Shale Refining Company, a somewhat different situation is presented. The Illinois Securities Law was approved and became effective June 10, 1919, and the Central Oil Shale Refining Company, having complied with the provisions of said act, was granted permission to sell its stock in this State, by a certificate of the Secretary of State dated August 15, 1919, though this certificate was revoked by the Secretary of State March 5, 1920, after the purchases of the stock of this company were made by appellee and while the certificates were in force, but this is a suit against appellant personally and not against the oil company and before appellant could have lawfully acted, either as dealer, agent, broker or solicitor for the sale of said stock, she would have had to qualify herself to act as such under said law, as is clearly indicated by the provision of the act. Sections 13 and 14, Cahill's St. ch. 32, ¶¶ 266, 267, are as follows:

"§ 13. If the statement as to securities in Class 'D' discloses that such securities are intended to be offered or sold by the issuer, through a solicitor, agent or broker, a statement giving the names, residences, qualifications, occupations and business experience of such solicitor, agent or broker for a period

of ten years prior to the filing, and the name and address of each employer, the period of employment and reason for resignation or discharge, shall be filed in the office of the Secretary of State. *The signatures of each and every of such solicitors, agents or brokers, shall be attached to such statement.* If after the filing of such statement the issuer shall appoint any additional solicitor, agent or broker to offer or sell such securities *before* any such additional solicitor, agent or broker, shall offer or sell any such securities, *there shall be filed like statements.*

"§ 14. After qualification of securities in Class 'D' by the issuer, *any dealer or owner* may sell such securities upon filing in the office of the Secretary of State, a statement verified by the oath of *such dealer or owner* as otherwise provided by this Act, a statement of the amount and description of the securities to be sold by him or it, the maximum price for which they are to be sold, his or its address by street and number, qualification, occupation, and business experience of such dealer or owner, for a period of ten years prior to filing such statement, giving name and address of each employer, the period of employment and the reason for resignation or discharge."

Section 29, Cahill's St. ch. 32, ¶ 282, provides that any *solicitor, agent* or *broker* selling or offering to sell any securities in Class "D" without compliance with the provisions of this act, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than $100, etc. Section 31, Cahill's St. ch. 32 ¶ 284, provides that *any person* or corporation, *whether acting on his or its own behalf or on behalf of another* violating any of the provisions of this act, shall be deemed guilty of a misdemeanor and on conviction thereof shall be fined not less than $100, etc. Section 37, Cahill's St. ch. 32, ¶ 290(1), of the act is as follows:

"§ 37. (1) Every sale and contract of sale made in

violation of any of the provisions of this Act shall be void * * * and the seller of the securities so sold * * * and each and every *solicitor, agent or broker of or for such seller,* who shall have knowingly performed any act or in any way furthered such sale, *shall be jointly and severally liable,* * * * upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, * * * together with his reasonable attorney's fees in any action brought for such recovery.''

There is no pretense that appellant ever attempted to comply with any of the provisions of this act in order to qualify herself either individually or as dealer, agent, broker or solicitor, to sell Class ''D'' securities of the oil company in question or of any other company.

It is next urged that appellee cannot recover because the proofs fail to show that she tendered back to appellant the same stock which she bought, as required by section 37 above quoted. This alleged error can have no application to the certificate of the stock of the Consumer's Oil & Shale Company because that certificate was tendered in court, but it is vigorously insisted that no certificate of the stock in the Central Oil Shale Refining Company was, in fact, tendered. The basis for this contention is that subsequent to the purchase by appellee of the stock of the Central Oil Shale Refining Company, this company changed its name to the Central Oil & Shale Company and changed the par value of its stock from one cent to one dollar per share. Appellee was notified of the change of name and requested to surrender the certificate of stock which she held in the Central Oil Shale Refining Company and receive, in lieu thereof, a certificate of stock of equal value of the Central Oil & Shale Company. This was accordingly done and appellee received a certificate of stock in the latter company which she tendered to appellant. The two companies

were the same, the only change being in the name and in the par value of the stock, which the evidence shows was raised from one cent to one dollar to facilitate the sale thereof. On a former appeal of this case (234 Ill. App. 137) this court held that appellee's right to recover is purely statutory and the conditions upon which that right is based must be strictly complied with and that the tender of certificates of stock other than the certificates of stock actually sold is not a sufficient tender under the statute, as the Securities Law requires a tender back of the stock actually purchased to the vendor as a condition precedent to the right of recovery. The evidence adduced at the former trial justified the conclusion that the Central Oil & Shale Company was a different corporation from the Central Oil Shale Refining Company, and that after appellee had purchased the stock she had reinvested the same by exchanging it for stock in another and different corporation. From the evidence introduced at the last trial, however, it appears that the reorganization of the corporation amounted merely to a change in the name and the par value of the stock, and that the stock tendered by appellee was a reissue of the same stock purchased from the appellant. It also appears from the testimony that appellee sent in the stock originally purchased for the purpose of exchanging it for the new stock at the instance of and by direction of appellant. We are of opinion that the stock tendered back by appellee was, in fact, the same stock purchased by her from appellant and that the requirement of the statute was substantially complied with. *Puntenney v. Wildeman & Co.*, 318 Ill. 139.

The allowance of attorney's fees was based upon the evidence and properly allowed.

There is no reversible error in the record and the judgment is affirmed.

*Judgment affirmed.*